# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIEDRE JACQUOT, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>MAN-ARNEET, CORP.,<br><br>    Defendant.<br>_____/ | Case No. 1:17-cv-00945-DAD-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT DEFENDANT'S MOTION TO SET ASIDE THE CLERK'S ENTRY OF DEFAULT BE GRANTED**<br><br>(Doc. 11)<br><br>**OBJECTIONS DUE: 21 DAYS** |

## I. INTRODUCTION

On September 22, 2017, Defendant Man-Arneet Corporation filed a motion to set aside the Clerk's entry of default. (Doc. 11.) On September 28, 2017, Plaintiffs Dierdre Jacquot and Robert Jacquot (collectively "Plaintiffs") filed an opposition to the motion, and on October 11, 2017, Defendant Man-Arneet filed a reply. (Docs. 12, 14.) The Court has reviewed the parties' submissions and determined, pursuant to Local Rule 230(g), that the matter was suitable for decision without oral argument. The Court accordingly vacated the motion hearing. (Doc. 15.)

For the reasons set forth below, the Court RECOMMENDS that Defendant Man-Arneet's motion to set aside the Clerk's entry of default be GRANTED.

## II. BACKGROUND

This action presents claims of disability-access discrimination. On July 14, 2017, Plaintiffs filed a complaint pursuant to Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12181-12189, its implementing regulation, 28 C.F.R. pt. 36, and the California Unruh Act, California Civil Code § 51 *et seq*. (Doc. 1 ("Complaint"), ¶ 1.) In the Complaint, Plaintiffs allege that a shopping center they visited, owned by Sunset Square and leased in part by Defendant Man-Arneet, a Subway sandwich franchisee, presented numerous barriers, which interfered with their ability—given their disabilities—to use and enjoy the goods, services, privileges, and accommodations offered there. (Compl., ¶¶ 7, 9-10, 15.) Plaintiffs seek an award of statutory damages, damages for pain and suffering, prejudgment interest on the damages, costs of suit, attorney's fees, declaratory relief, and injunctive relief. (Compl. at 20.) Defendant Man-Arneet was served with the Complaint on July 17, 2017. (Doc. 5.)

**A.    Mr. O'Rourke's Representation of Defendant Man-Arneet.**

Counsel for the parties began corresponding about the case on July 31, 2017. (Doc. 11-2, ¶ 5; Doc. 11-2, Ex. 2, at 1; Doc. 12, ¶ 4.) That day, counsel for former defendant Sunset Square, Sean Thomas O'Rourke, Esq., and Plaintiffs' counsel, Layne Eric Hayden, Esq., spoke by telephone and then by email. (Doc. 11-2 ¶ 5; Doc. 12 ¶ 4.) In the email exchange, Mr. O'Rourke confirmed his representation of Sunset Square. (Doc. 11-2, Ex. 2, at 1.) As to Defendant Man-Arneet, he stated, "[W]e would be seeking to either represent the interests of the individual tenants or otherwise have them dismissed or the action stayed as to them," and he suggested the parties "[s]tipulate to extend time to file a responsive pleading to the filed actions, and any stipulations you might need to the unfiled actions." (Doc. 11-2, Ex. 2, at 1.)

According to Plaintiffs' counsel, Mr. Hayden, he understood this email to mean Mr. O'Rourke represented Sunset Square, but "did not represent the individual tenants," including Defendant Man-Arneet. (Doc. 12, ¶ 6.) Further, according to Mr. Hayden, during the earlier telephone conversation, he asked Mr. O'Rourke "if he represented the individual tenants and he said no, but that he thought that he would probably end up representing them." (Doc. 12-1, ¶ 4.)

That same day, Plaintiffs' counsel, Mr. Hayden sent a settlement demand to Mr. O'Rourke, stating in pertinent part, "We would agree to a 30 day extension of time to file a response to the complaints in the five actions that have been filed . . . ," and it refers to the listed entities, including Defendant Man-Arneet, as "your clients." (Doc. 14, Ex. A, at 1.)

On several occasions over the ensuing month, Mr. O'Rourke asked Plaintiffs' counsel, Mr. Hayden, for information about service of the Complaint on Defendant Man-Arneet. On August 4, 2017, Mr. O'Rourke requested information about proofs of service. (Doc. 11-2, Ex. 3.) On August 10, 2017, in response to an earlier email from Mr. Hayden, titled "Sunset Square," in which Mr. Hayden had requested contact information for the agent for service (presumably for former defendant Sunset Square), Mr. O'Rourke accepted service for Sunset Square and again requested information as to service on Defendant Man-Arneet. (Doc. 11-2, Ex. 4, at 1.) On August 17, 2017, Mr. O'Rourke emailed the waiver of service as to Sunset Square, and asked whether Plaintiffs would agree to dismiss the claims against Defendant Man-Arneet. (Doc. 11-2, Ex. 5; Doc. 6.) Finally, in a phone conversation on August 18, 2017, Mr. O'Rourke stated he was "representing the interests" of Defendant Man-Arneet, and he again inquired about proofs of service. (Doc. 11-2, ¶ 9.)

**B.  Plaintiffs Obtain a Default Against Defendant Man-Arneet and Dismiss Sunset Square from the Case.**

On August 20, 2017, after Defendant Man-Arneet failed to file a responsive pleading within the prescribed time limit, Plaintiffs' counsel, Mr. Hayden, requested that the Clerk of the Court enter default, and on August 21, 2017, the Clerk entered default. (Docs. 7-8.)

On August 23, 2017, Mr. Hayden informed Mr. O'Rourke that he had requested a default against Defendant Man-Arneet. (Doc. 11-2, ¶ 10.) Accordingly, on September 13, 2017, Mr. Hayden filed a notice of dismissal, seeking to voluntarily dismiss Sunset Square from the action, because "the default on Man-Arneet would provide the relief the Plaintiff had requested by way of a judgment of default which was to follow the clerk default." The Court entered an order voluntarily dismissing Sunset Square without prejudice. (Doc. 12-1, ¶ 15; Docs. 9-10.)

That same day, Mr. O'Rourke asked Plaintiffs' counsel, Mr. Hayden, to stipulate to set aside the default as to Defendant Man-Arneet, to no avail. (Doc. 11-2, Ex.8.) On September 22, 2017, Mr. O'Rourke filed a motion to set aside the Clerk's entry of default against Defendant Man-Arneet—the motion currently before the Court. (Doc. 11.)

On September 23, 2017, Mr. Hayden, Plaintiffs' counsel, asked Mr. O'Rourke to agree to set aside the dismissal of former defendant Sunset Square, to which Mr. O'Rourke replied that "it has got to be reciprocal." (Doc. 12-1, at 9; Doc. 14 Ex. C, at 2.)

Having reached no agreement to set aside the default in exchange for setting aside the dismissal of Sunset Square, Plaintiffs filed an opposition to the instant motion on September 28, 2017, and Defendant Man-Arneet filed a reply on October 11, 2017. (Docs. 12, 14.)

### III. DISCUSSION

#### A. Legal Standard

The Federal Rules of Civil Procedure permit the Court to set aside an entry of default for good cause shown. Fed. R. Civ. P. 55(c). To determine whether good cause exists, "the court must consider three factors: (1) whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *U.S. v. Signed Pers. Check No. 730 of Yubran S. Mesle* ("*Mesle*"), 615 F.3d 1085, 1091 (9th Cir. 2010) (citing *Franchise Holding II, LLC v. Huntington Rests. Group, Inc.* ("*Franchise Holding II*"), 375 F.3d 922, 925-26 (9th Cir. 2004)); *see also Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 2004).

The movant bears the burden of showing that each of the so-called *Falk* factors favors setting aside the default. *See TCI Group Life Ins. Plan v. Knoebber* ("*TCI Group*"), 244 F.3d 691, 696 (9th Cir. 2001); *see also Mesle, 615 F.3d* at 1091. The standard is the same for setting aside entry of a default under Rule 55 as it is for setting aside a default judgment under Rule 60, but it is more liberally applied under Rule 55. *Id.* at 1091, n.1. The Court may, however, within its discretion, grant relief from default even after finding that one of the *Falk* factors does not favor setting aside the default. *Brandt v. Am. Bankers Ins. Co.*, 653 F.3d 1108, 1111 (9th Cir. 2011).

When considering the *Falk* factors, the Court is to be guided by the underlying policy concern that "[j]udgment by default is a drastic step appropriate only in extreme circumstances . . . ." *Mesle*, 615 F.3d at 1091 (quoting *Falk*, 739 F.2d at 463). All things being equal, ". . . a case should, whenever possible, be decided on the merits." *U.S. v. Aguilar*, 782 F.3d 1101, 1107 (quoting *Mesle*, 615 F.3d at 1095; *Falk* 739 F.2d at 463); *see also Mendoza v. Wight Vineyard Mgmt.*, 783 F.2d 941, 945-46 (9th Cir. 1986) ("Where timely relief is sought from a default . . . and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the [default] so that cases may be decided on their merits.) (quoting *Schwab v. Bullock's Inc.*, 508 F.2d 353, 355 (9th Cir. 1974)). The Ninth Circuit reviews a district court's denial of a motion to set aside . . . default . . . for abuse of discretion. *Yoo Chui Yoo v. Arnold*, 615 Fed. Appx. 868, 869 (9th Cir. 2015) (quoting *Brandt*, 653 F.3d at 1110).

**B.     Analysis of the *Falk* Factors**

    **1.     Defendant Man-Arneet's Conduct is Not Culpable.**

The first issue is whether the failure by Mr. O'Rourke, acting on behalf of Defendant Man-Arneet, to file a responsive pleading to the Complaint was culpable conduct by Defendant Man-Arneet. A party's conduct is culpable "if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer." *TCI Group*, 244 F.3d at 697 (emphasis in original) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)); *see also Meadows v. Dom. Rep.*, 817 F.2d 517, 521 (9th Cir. 1987) (defendant "intentionally declined" service).

While raised by neither party, the Court observes that the Ninth Circuit has articulated two standards for determining intentionality. One standard, announced in *Franchise Holding II*, 375 F.3d at 926, holds that the defaulting party's conduct may be culpable merely by virtue of receiving actual or constructive notice of an action and failing to answer, without regard to the party's intent. "[A]n understanding of the consequences of its actions may be assumed, and with it, intentionality." *Mesle*, 615 F.3d at 1093 (citing *Direct Mail Specialists, Inc. v. Eclat*

*Computerized Tech., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)). The other standard provides that the failure to answer must be intentional. *See TCI Group*, 244 F.3d at 698.

Although Defendant Man-Arneet was apparently represented at the time of the entry of default, for the reasons that follow, the Court will apply the more lenient *TCI Group* standard. First, the facts of this case do not fit within the limited application of *Franchise Holding II*. *See Mesle*, 615 F.3d at 1093 ("[*Franchise Holding II*] is not the ordinary standard for Rule 55(c) and 60(b) motions; in fact, [the Ninth Circuit] ha[s] never applied it to deny relief in the context of such motions except when the moving party is a legally sophisticated entity or individual.") Next, even when the defaulting party is legally sophisticated or represented by counsel, the Court may nevertheless, in its discretion, refuse to apply the *Franchise Holding II* standard and instead apply the more lenient one. *See*, *e.g.*, *Anderson v. The Hain Celestial Grp., Inc.*, SACV 13-1747-DOC (ANx), 2014 WL 2967603, at *4 (C.D. Cal. July 1, 2014) (declining to apply *Franchise Holding II* because defendant, acting through counsel, provided a credible explanation and promptly attempted to set the default aside); *Yagman v. Galipo*, No. 12-cv-7908-GW(SHx), 2013 WL 1287409, at *10-11 (C.D. Cal. March 25, 2013) (declining to apply *Franchise Holding II* because the defendants, though represented by counsel, "do not fit within the Ninth Circuit's narrow view of *Franchise Holding II*'s application"); *Vann v. Aurora Loan Servs. LLC*, 10-cv-04736, 2011 WL 1002093, at *3 (N.D. Cal. March 21, 2011) (declining to apply *Franchise Holding II* because the default by defendant, who was represented by counsel, resulted from mere negligence or inadvertence, defendant had not attempted to avoid service, and defendant appeared promptly after the default).

Under the *TCI Group* standard, a party's failure to answer is intentional, and thus culpable, "where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." The defaulting party "cannot be treated as culpable simply for having made a conscious choice not to answer." *Mesle*, 615 F.3d at 1092 (citation omitted). Put plainly, "it is clear that simple carelessness is not sufficient to treat a negligent failure to reply as inexcusable, at least without a demonstration that other equitable factors, such as prejudice, weigh heavily in favor of denial of the motion to set aside a default." *Id*. The act must evince an intent

to "take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process . . . ." *TCI Group*, 244 F.3d at 698. The party seeking to set it aside must present a "credible, good faith explanation" negating a nefarious intent. *Id*.

Here, under the *TCI Group* standard, the conduct of Mr. O'Rourke, acting on behalf of Defendant Man-Arneet, was not culpable. As set forth more fully below, Mr. O'Rourke credibly explains the default, and it does not evidence any attempt by Defendant Man-Arneet to weaken Plaintiffs' litigation efforts or otherwise manipulate the legal process. *See TCI Group*, 244 F.3d at 698.

>    **a.   The Inability of Defendant Man-Arneet's Counsel to Obtain Proof of Service, and Consequent Failure to File a Responsive Pleading, Was Not Culpable.**

It is undisputed that Mr. O'Rourke did not know whether or when Defendant Man-Arneet had been served with the Complaint at the time default was entered, and therefore was not aware of Defendant Man-Arneet's obligation to respond. (*See* Doc. 11-2, Ex. 3 (email from Mr. O'Rourke to Plaintiffs' counsel, Mr. Hayden, requesting that he "either provide my office with the proofs of service or advise when service was completed so that we can calendar when responses"); Doc. 11-2, Ex. 4, at 1 (email from Mr. O'Rourke to Plaintiffs' counsel, Mr. Hayden, stating that Mr. O'Rourke is "awaiting information on the dates that any tenants were served"); Doc. 11-2, ¶ 9 (phone call from Mr. O'Rourke to Plaintiffs' counsel, Mr. Hayden, inquiring about proof of service and asking about the time-limit to respond to the Complaint)). Indeed, Plaintiffs' counsel, Mr. Hayden, admits that he did not provide this information, explaining that Mr. O'Rourke "did not enter an appearance on [Defendant Man-Arneet's] behalf, nor did he provide me with anything in writing indicating that he represented them." (Doc. 12-1, ¶ 6.)

Mr. O'Rourke's mistaken belief that Plaintiffs' counsel, Mr. Hayden, knew he was representing Defendant Man-Arneet, and would therefore keep him abreast of service dates and time limits, is not also culpable conduct under *TCI Group*, because Mr. O'Rourke was justified in believing he had sufficiently conveyed this representation to Mr. Hayden. In the first email between counsel, the July 31 email, Mr. O'Rourke indicated that he "would be seeking to either

represent the interests of the individual tenants or otherwise have them dismissed or the action stayed as to them." (Doc. 11-2, Ex. 2, at 1.) While not the most precise articulation, the sentence, read closely, appears to indicate that Mr. O'Rourke will represent Defendant Man-Arneet under any of the listed circumstances: whether Man-Arneet is dismissed from the action; whether the action is stayed as to them; or whether the matter is fully litigated as to Defendant Man-Arneet.[1]

A similar case adjudicated by another district court in the Ninth Circuit, *Yagman v. Galipo*, No. 12-cv-7908-GW(SHx), 2013 WL 1287409, at *10-11 (C.D. Cal. March 25, 2013), is instructive. There, the defendants, who were not legally sophisticated (they had been involved in only one previous legal action), defaulted by failing to file an answer. *Id*. at *11. At the time of the default, the defendants were represented by counsel. *Id*. Counsel for the defendants advised the defendants not to respond to the complaint because he believed service was improper. *Id*. Despite finding the defendants' explanation "weak," the Court determined that the defendants "[did] not fit within the Ninth Circuit's narrow view of *Franchise Holding II*'s application," attributing the default to a "negligent[] and careless[] fail[ure] to act." *Id*. The Court thus concluded that the defendant's conduct, through their counsel, was not culpable. *Id*.

The Court similarly finds that Mr. O'Rourke's failure to do more to obtain the proof of service, while perhaps careless, does not evince Defendant Man-Arneet's intentional failure to respond to the Complaint. *See*, *e.g.*, *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1225 (9th Cir. 2000) (setting aside default, despite counsel's failure to arrange for another attorney to handle his cases while he was away, an "admittedly [] weak" reason for defaulting, one that "showed a lack of regard for his client's interests and the court's docket . . . ," because his "errors resulted from negligence and carelessness, not from deviousness or willfulness . . . .").

---

[1] In fact, Plaintiffs' counsel, Mr. Hayden, appears to acknowledge in his July 31 settlement demand that Mr. O'Rourke was representing Defendant Man-Arneet. The demand states, "We would agree to a 30-day extension of time to file a response to the complaints in the five actions that have been filed." (Doc. 14, Ex. A, at 1.) One of the five actions referenced lists Defendant Man-Arneet. In addition, the demand refers to the listed entities, including Defendant Man-Arneet, as "your clients." (Doc. 14, Ex. A, at 1.) Accepting as true the statement by Plaintiffs' counsel, Mr. Hayden, that he does not communicate with counsel unless the representation is documented with an entry of appearance or otherwise in writing, it appears that he believed Mr. O'Rourke was representing Defendant Man-Arneet. Not only did Mr. Hayden mention Defendant Man-Arneet in the settlement demand (Doc. 14, Ex. A, at 1), but three days after the Clerk of the Court entered default (prior to Mr. O'Rourke formally entering his appearance) Mr. Hayden informed Mr. O'Rourke about service of the Complaint and the default (Doc. 11-2, ¶ 10).

### b. Defendant Man-Arneet's Counsel Promptly Attempted to Set Aside the Default.

Finally, Defendant Man-Arneet's conduct is not culpable because, upon learning of the default, Mr. O'Rourke promptly attempted to resolve it. The Ninth Circuit has held, "Where timely relief is sought from a default and the movant has a meritorious defense, doubt, if any, should be resolved in favor of the motion to set aside the default." *O'Connor v. State of Nev.*, 27 F.3d 357, 364 (9th Cir. 1994) (quoting *Mendoza*, 783 F.2d at 945)).

In an email on September 13, 2017, three weeks after he learned of the default, Mr. O'Rourke asked whether Plaintiffs' counsel, Mr. Hayden, would stipulate to set aside the default. (Doc. 11-2, Ex.8); *see*, *e.g.*, *Russell-Thomas*, 2015 WL 729673, at *3 (noting that the defaulting party "promptly moved to set aside the default" when it did so two-and-a-half weeks after entry of default). After it became clear that Mr. Hayden would not stipulate to set aside the default, Mr. O'Rourke filed this motion.

The Court is mindful that wide discretion is afforded when considering a motion to set aside an entry of default. *Mendoza*, 783 F.2d at 945. Further, any doubt should be resolved in favor of setting aside the default so that the case may be decided on the merits. *Schwab*, 508 F.2d at 355. Mr. O'Rourke's explanation for the default evinces no devious or bad faith attempt to manipulate Plaintiffs or subvert the judicial process. As a result, the Court finds that Defendant Man-Arneet's conduct in failing to file a responsive pleading is not culpable.

### 2. Defendant Man-Arneet Alleges a Meritorious Defense.

The second issue for the Court to resolve in determining good cause to set aside the default is whether Defendant Man-Arneet has alleged a meritorious defense to the Complaint. "A defendant seeking to vacate a default judgment must present specific facts that would constitute a defense. But the burden on a party seeking to vacate a default judgment is not extraordinarily heavy." *TCI Group*, 244 F.3d at 700. "All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense . . . ." *Mesle*, 615 F.3d at 1094 (citing *TCI Group*, 244 F.3d at 700). In other words, as articulated by the D.C. Circuit, "Likelihood of success is not the measure. Defendants' allegations are meritorious if they

contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense." *Keegal v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C. Cir. 1980) (quoting *Moldwood Corp. v. Stutts*, 410 F.2d 351, 352 (5th Cir. 1969)).

Here, Defendant Man-Arneet attacks Plaintiffs' standing to seek injunctive relief. Specifically, Defendant Man-Arneet alleges:

> The conditions complained of are being repaired by the owners of the shopping complex. Hence, the claims will be moot. The alleged lack of proper signage was already remedied, and a brand new handicapped parking area has been designed and is waiting City approval.

(Doc. 14, at 4.)

To invoke the jurisdiction of the federal courts, a plaintiff claiming discrimination under the ADA must satisfy the case-or-controversy requirement imposed by Article III of the Constitution by demonstrating their standing to sue at each stage of the litigation. *Chapman v. Pier 1 Imps. (U.S.) Inc.*, 631 F.3d 939, 946 (2011); *see also* U.S. Const. art. III, § 2; *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Fortyune v. Am. Multi-Cinema, Inc.*, 364 F.3d 1075, 1080-81 (9th Cir. 2004) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 101 (1983). Moreover, to establish standing to seek injunctive relief, a plaintiff must demonstrate a "real and immediate threat of repeated injury in the future." *Pier 1 Imps. (U.S.) Inc.*, 631 F.3d at 946 (quoting *Fortyune*, 364 F.3d at 1081).

The Court finds that Defendant Man-Arneet has alleged a meritorious defense by claiming that its purported corrections to the accessibility barriers now deprive Plaintiffs of standing to seek injunctive relief.

### 3. There is No Prejudice to Plaintiffs From Setting Aside the Default.

The final *Falk* factor asks whether the plaintiff will suffer prejudice if the entry of default is set aside. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Group*, 244 F.3d at 701; *see also Mesle*, 615 F.3d 1094. Plaintiffs contend that if the motion is granted, "then the voluntary dismissal on Sunset Square must be set aside as otherwise, Man-Arneet could point to Sunset Square as the liable party, resulting in prejudice to Plaintiff." (Doc. 12, at 7.) Plaintiffs' contention is misplaced; even

though Sunset Square has been dismissed from the action, Defendant Man-Arneet cannot avoid a finding of liability in this case, if liability is indeed found, because defendants are jointly and severally liable for Title III ADA violations.  *Acosta v. Down Town Car Wash, Inc.*, 1:16-cv-01856-LJO-SKO, 2017 WL 2210245, *2, n.1 (E.D. Cal. May 19, 2017); *see also Botosan v. McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000).  The Court can therefore find no prejudice so extraordinary that would militate against the Ninth Circuit's commitment to deciding cases on the merits.[2]  *See Mesle*, 615 F.3d at 1095.

### IV. RECOMMENDATION

Based on consideration of the declarations, pleadings, and exhibits to the present motion, the Court RECOMMENDS that the presiding district court judge GRANT Defendant Man-Arneet's motion to set aside the Clerk's entry of default, (Doc. 11).

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within twenty-one (21) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated: **October 23, 2017**         /s/ *Sheila K. Oberto*
                                    UNITED STATES MAGISTRATE JUDGE

---

[2] The Court notes that nothing in this order hinders the parties' ability to stipulate to set aside the dismissal of former defendant Sunset Square from the action or to amend the Complaint to replead it as a party.

11